FILED
SUPERIOR COURT
OF GUAM

2018 MAR -8 PM 2: 23

CLERK OF COURT
By:

## IN THE SUPERIOR COURT OF GUAM

| GEORGE CHAMBERS, JR., | CIVIL CASE NO. CV0836-14 |
|---|---|
| Plaintiff, | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| KINDEN CORPORATION and WYATT PARK, | |
| Defendants. | |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on November 13, 2017. Plaintiff George Chambers, Jr. appeared *pro se*. Attorneys Joseph C. Razzano and Joshua D. Walsh Defendants Kinden Corporation and Wyatt Park. After a bench trial, the Court ordered the parties to file proposed findings of fact and conclusions of law. Plaintiff filed his proposed findings of fact and conclusions of law on October 27, 2017, and Defendants filed their proposed findings of fact and conclusions of law on November 13, 2017. Based on a review of trial testimony, pleadings and applicable statutes, the Court now issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following finds of fact:

1. The events surrounding this trial occurred at and during the building of the Navy Hospital ("Naval Hospital Project") on Guam.

2. The Owner of the Naval Hospital Project was the United States Navy.

3. The General Contractor for the Naval Hospital Project was Watts/Webcor/Obayashi.

4. Defendant Kinden Corporation ("Kinden") was hired as a subcontractor on the Naval Hospital Project to provide electrical engineering and construction services.

5. Kinden hired Plaintiff as a Quality Control ("QC") Manager in April of 2013.

6. Plaintiff is an African-American.

7. Kinden tasked Plaintiff with the preparation of the Operation and Maintenance Manuals for the work being provided by Kinden for approval of the Owner.

8. The Naval Hospital Project, one of the most significant and complex military building projects, was delayed and behind schedule from the beginning.

9. Kinden's contract with the General Contractor included liquidated damages for late construction that could be passed down from general contractor to subcontractor.

10. Kinden amassed liquidated damages at a rate of $158,000-$200,000 per day.

11. The delays and the complexity of the Naval Hospital Project created a combination of high pressure created by the combined nature of the complex construction job and the increasing pressure caused by construction delays, which led to an intense atmosphere at the Project jobsite.

12. Plaintiff, hired to be a QC Manager on the Naval Hospital jobsite, did not complete the QC manual preparation tasks he was assigned.

13. During the four months Plaintiff was employed, Plaintiff failed to submit a proposed Operation and Maintenance Manual acceptable to the General Contractor.

14. As a result of Plaintiff not submitting an acceptable Operation and Maintenance Manuel to the General Contractor, the General Contractor could not submit an Operation and Maintenance Manuel to the Owner for final approval.

15. During the four months of his employment, Plaintiff was often absent from the jobsite, despite Kinden requiring his presence at the jobsite.

16. In June 2013, Kinden hired Defendant Park, a man with extensive mechanical engineering experience and twenty-seven years of experience working construction projects on Guam, Superintendent of Construction.

17. Kinden hired Defendant Park to take charge of the Project as to ensure that Kinden met its deadlines promised to Owner. Defendant Park was hired specifically to try to alleviate these problems and get Kinden's subcontract back on schedule.

18. Despite Kinden's dissatisfaction with Plaintiff, Kinden did not fire Plaintiff, and retained Plaintiff because his English language skills were thought by Kinden to be an asset for interactions with the project prime contractor, and because a general lack of manpower meant that he could possibly assist in other areas needed for the completion of the project.

19. Between June 2013 and August 20, 2013, Defendant Park worked on the Project jobsite with Kinden's employees, starting at 6:30 A.M. every workday. Mr. Chambers continued to be chronically absent from the jobsite.

20. In July of 2013, Defendant Park met with Plaintiff to explain to Plaintiff that the Operation and Maintenance manuals were a critical part of the Project. Moreover, Defendant Park expressed to Plaintiff of the need to be at the jobsite by 6:30 a.m. to attend the morning meetings. These meetings explained the day's task and where the work would be happening. Without attending the meetings, the QC manager would not know what work needed to be inspected and what work needed to be signed off. Finally, Defendant Park explained to Plaintiff that Plaintiff's inability to successfully perform his job stemmed largely from his excessive absences.

21. Despite Defendant Park's admonitions, Plaintiff did not correct these problems and his absences continued.

22. In July of 2013 Plaintiff informed Kinden Assistant General Manager Taro Watabe that Defendant Park had been pushing him to complete the job, and that his pushing caused Plaintiff stress.

23. In August of 2013, Kinden's President, Tomeyoshi Tachibana, transferred Plaintiff's duties with respect to the Operation and Maintenance manuals to Defendant Park, creating tension between Plaintiff and Defendant Park.

24. On August 20, 2013, at 8:29 A.M., Defendant Park sent an email to Plaintiff expressing his dissatisfaction with Plaintiff's work.

25. On August 20, 2013, at approximately 10:30 A.M., Plaintiff arrived at Kinden's temporary office at the Naval Hospital jobsite furious about Defendant Park's email.

26. Plaintiff approached Defendant Park, and the two men began to argue loudly. During the argument, Plaintiff struck Defendant Park's head.

27. Mr. Tachibana intervened between Plaintiff and Defendant Park in order stop the argument. After Mr. Tachibana stopped the argument, Letisha Tarin interviewed both Plaintiff and Defendant Park at the Kinden office regarding the altercation between the two men.

28. Letisha Cezilia Tarin was the Purchasing Manager, Human Resource Manager, and Administration for Kinden on August 20, 2013.

29. During his interview, Plaintiff confirmed to Ms. Tarin that he struck Defendant Park on the side of the head.

30. On August 30, 2013 Plaintiff and Kinden, officially parted ways after executing a separation agreement.

31. On September 3, 2013, Plaintiff filed a complaint with Guam's Department of Labor ("DOL") and United States Equal Employment Opportunity Commission ("EEOC").

32. The DOL investigated Plaintiff's complaint and declined to prosecute Plaintiff's claim.

33. The EEOC adopted the DOL's conclusion and granted Plaintiff a Right-to-Sue letter so that Plaintiff could pursue his claim individually.

34. Plaintiff received the EEOC Right-to-Sue letter on July 7, 2014.

35. Plaintiff filed his Complaint in the Superior Court of Guam on September 10, 2014.

36. On November 14, 2016, the Court held a bench trial for this instant case. At the bench trial, Plaintiff offered Rebecca Marie Doanne, Justin Lawson, and himself as witnesses. At the conclusion of Plaintiff's case-in-chief, the Court continued the bench trial to September 5, 2017.

37. On September 5, 2017, the Court continued the bench trial. Defendants presented their defense offering Taro Watabe, Defendant Park, Robert McKee, Tomeyoshi Tachibana, Rosellar Balaoeg, Letisha Tarin, and Nollie Serrano as witnesses.

38. At the conclusion of the bench trial on October 5, 2017, the Court ordered Plaintiff and Defendants to file their respective proposed findings of fact and conclusions of law.

39. On October 27, 2017, Plaintiff filed his proposed findings of fact and conclusions of law.

40. On November 13, 2017, Defendants filed their proposed findings of fact and conclusions of law.

41. Having received proposed findings of fact and conclusions of law from all parties, on November 13, 2017, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

The Court now issues the following conclusions of law on the matters:

1. Plaintiff brings suit against Kinden and Defendant Park alleging a violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

2. Plaintiff has sued Defendant Park directly under Title VII. "Title VII does not create causes of action against supervisors or coworkers." Craig v. M&O Agencies, Inc., 496 F.3d 1047, 1058 (9th Cir. 2007); see also Holly D. v. Cal. Inst. Of Tech., 339 F.3d 1158, 1179

(9th Cir. 2003); Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993).

3. The Court finds that, because Title VII does not create a cause of action against supervisors or coworkers, the Courts lacks subject-matter jurisdiction over Plaintiff's Title VII claims against Defendant Park.

4. The Court has subject-matter jurisdiction over the remaining Title VII claim against Kinden pursuant to 42 USCA § 2000e.

5. Volume 42 United States Code Section 2000e codifies the relevant section of Title VII.

6. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 USCA § 2000e-2(a)(1).

7. Title VII generally applies to employers with more than fifteen employees, including federal, state, and local governments. See id.

8. Title VII is not limited to "economic or tangible discrimination", but rather intended to prohibit "the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)) (internal quotations omitted).

9. Title VII is violated "when the workplace is permeated with "discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Meritor, 477 U.S. at 65, 67) (internal quotations omitted).

10. While racist epithets have no place in a work environment, not all instances of a use of a racist epithet creates a hostile work environment cognizable under Title VII. The United States Supreme Court has explained:

> As we pointed out *in Meritor,* mere utterance of an epithet which engenders offensive feelings in a employee, does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VH violation.

Id. at 21-22 (quoting Meritor, 477 U.S. at 67) (internal quotations omitted).

11. The Ninth Circuit lists the elements Plaintiff must meet to prevail on "hostile work environment" claim. To prevail Plaintiff must show (1) he was subjected to verbal or physical conduct because of his race; (2) this conduct was unwelcome; and (3) this conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. Manatt v. Bank of Am., NA, 399 F.3d 792, 798 (9th Cir. 2003) (citing Kang v. U. Lim. Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002).

12. Whether an environment is "hostile" or "abusive" can be determined only by looking at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23. Any relevant factor may be taken into account, and no single factor is dispositive. Id.

13. Plaintiff proffered testimony from Mr. Justin Lawson, a colleague from the Naval Hospital jobsite. Mr. Lawson claimed he heard Defendant Park call Plaintiff a "nigger". However, Mr. Lawson testified that he was standing at least 100 feet away from where the alleged remark occurred, on a lower building level, and outside of the office where the alleged remark was made Although Mr. Lawson testified that he heard Defendant Park call Plaintiff a "nigger", the Court does not make a factual finding that Defendant Park actually called Plaintiff a "nigger" as there are questions of the reliability of the factual basis of Mr. Lawson's testimony. Mr. Lawson's testimony indirectly conflicts with the testimony of other

witnesses at the trial who testified about the allegations of racial animus at the Naval Hospital jobsite.

14. While there was tension between Plaintiff and Defendant Park, Plaintiff provides no evidence that such tension was based upon racial animus.

15. Plaintiff fails to sustain his burden to prevail on his "hostile work environment" claim. Plaintiff fails to show that he was subjected to verbal or physical conduct because of his race. Although there is testimony that Defendant Park allegedly called Plaintiff a "nigger", the Court declined to make a factual finding that the incident occurred.

16. Even if Defendant Park did call Plaintiff a "nigger" on the date alleged by Plaintiff, case law within the Ninth Circuit shows that Kinden's conduct was neither severe nor pervasive enough to alter the conditions of Plaintiff's employment. See e.g. Alvarado v.FedEx Corp., 2006 WL 644875 at *15-16 (N.D.Cal. Mar. 13, 2006) (finding no actionable cause under Title VII even when a supervisor was alleged to be criticizing plaintiff "for every little thing," and calling plaintiff a "nigger" on one occasion.), Hercules v. Department of Homeland Sec., 2008 WL 1925193 at *20-21 (N.D.Cal. Apr. 29, 2008) (concluding that limited alleged use of the terms "bitch" and "nigger" directed to an employee by a supervisor was insufficient to establish a continuous, pervasive pattern of racial slurs giving rise to a claim under Title VII), Stevens v. County of San Mateo, 2006 WL 581092 at *5~6 (N.D.Cal. Mar. 7, 2006) (concluding that the occasional use of comments directed at the plaintiff, including "you're my nigger" was not severe or pervasive enough to be actionable under Title VII as a hostile work environment claim). Plaintiff fails to demonstrate how this conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. Therefore, the Court finds that Kinden did not violate Title VII.

17. Plaintiff has also alleged that he was subjected to a constructive discharge by being "forced to resign."

18. The constructive discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." If an employee resigns in such circumstances, Title VII treats the resignation as an actual discharge. Green v. Brennan, 136 S.Ct. 1769, 1776-77 (2016) (quoting Pa. State Police v. Suders, 542 U.S. 129, 141-43 (2004)).

19. To prevail on his claim of constructive discharge, Plaintiff must prove that (1) he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) he actually resigned because of the discriminatory conduct. Id. at 1777 (citing Suders, 542 US. at 148).

20. Although Plaintiff resigned from his position, Plaintiff fails to demonstrate that Kinden discriminated against him to the point "where a reasonable person in his position would have felt compelled to resign", or that the discriminatory conduct resulted in his resignation. Therefore, the Court finds that Kinden did not constructively discharge Plaintiff.

21. Having found that the Court lacks subject-matter jurisdiction over Plaintiff's claims against Defendant Park, and that Kinden did not commit a violation of Title VII or constructively discharge Plaintiff, the Court finds that Defendants Kinden Corporation and Park are the prevailing parties in this litigation. The Court DENIES Defendants' request for court costs and fees. Neither Plaintiff nor Defendants shall take anything from this matter.

22. Any Finding of Fact stating a Conclusion of Law shall be deemed a Conclusion of Law, and any Conclusion of Law stating a Finding of Fact shall be deemed a Finding of Fact.

/ / /

/ /

/

## CONCLUSION

Based upon the foregoing, and after making findings upon a preponderance of the evidence, the Court finds that the Defendants Kinden Corporation and Wyatt Park the prevailing parties in this litigation. The Court DENIES Defendants' request for court costs and fees. Neither Plaintiff nor Defendants shall take anything from this matter.

IT IS SO ORDERED_____MAR 0 8 2018_____.


**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

Received for Service

_____ M

_____ 20 ____

Marshal Superior Court
of Guam _____

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:

Civil eFiling

Date 3-8-18 Time: 2:30 PM
Jerimie K.C. James
Deputy Clerk, Superior Court of Guam